THE MAYAGÜEZ DOCK & SHIPPING COMPANY, Petitioner, *v.* SUPERINTENDENT OF INSURANCE OF PUERTO RICO, Respondent.

No. 1. Argued November 9, 1932.—Decided June 15, 1933.

*J. Sabater* for petitioner. *Charles E. Winter, Attorney General* (*James R. Beverley* on the brief), *A. Ortiz Toro, Assistant Attorney General,* and *V. Brunet* for respondent.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This is a proceeding for review, instituted in accordance with section 27 of the Workmen's Compensation Act, No. 85 of 1928, (*Soltero, Supt. of Insurance* v. *District Court,* 41 P.R.R. 511), and prosecuted under the rules established in the case of *Aguadilla Lighter & S. Co.* v. *Soltero,* 43 P.R.R. 209.

The Mayagüez Dock and Shipping Co. complains that the Superintendent of Insurance unduly applied to its work-

men classification 7309 of the "Workmen's Compensation and Employers' Liability Insurance Manual." It maintains that Nos. 7034 and 7317 of said Manual should be applied to it.

The attitude of the company is set forth in a letter written by its President to the Superintendent of Insurance, as follows:

"We refer to the interview recently had by the undersigned with you in connection with the insurance premiums of our workmen.

"For your information we are enclosing herewith a copy of the letter we wrote on November 28th last to the Treasurer of Puerto Rico when we first stated to said Department our views on the matter.

"Meanwhile and after conferring with you we have obtained a Manual on Workmen's Compensation Insurance and Bulletin No. 1 containing the rates applicable in Puerto Rico, the last of these having been furnished to us by your office.

"After a study of said Manual and in accordance with our best opinion, we believe that the workmen employed in our warehouses can not be regarded as those commonly designated as 'Stevedores'. We believe that the latter workmen are those directly connected with the loading and unloading of ships, such as those who work on board the ships and in the docks where the ships moor, while the workmen employed by us in our warehouses only do the work of moving cargo on cartwheels or by hand from one place to another, and more properly fall under the classification, 'Storage Warehouses' Code No. 8291, the rate for which is $2.47, or perhaps under the classification, 'Warehousing' Code No. 8292, the corresponding rate being $2.67. As a matter of fact the business in which we utilize our workmen is that of storing, receiving, or delivering merchandise in warehouses, which is properly known in the United States as 'Warehouses' or 'Storage Business.'

"In applying the 'Stevedores' classification in our case, our business is confused with that of piers where ships moor and where the laborers known as 'longshoremen' work, which as you know are those that do work properly called 'Stevedoring.'

"We, therefore, request that instead of classification 7309 which has been applied to us, No. 8291 be applied and which corresponds to 'Storage Warehouse,' or perhaps No. 8292 pertaining to 'Warehousing.'

"Under the classification 'Stevedoring' is included No. 7317 for workmen, who, like ours, do not operate cranes or hoisting machines, which classification, having a lower rate than those indicated above, would be more beneficial to us, but we do not expect that said classification be applied to us, for in reality it is not applicable to us, as our workmen do absolutely no work of 'Stevedoring.' The only work they do is that of receipt and delivery in warehouses or deposits.

"An ocular inspection of our establishment would serve to verify the above assertion and would tend to make the existing confusion disappear and to bring about the application to us of the proper classification. Hence, we take the liberty of suggesting to you the advisability, or rather the necessity that exists for such an inspection, and we request, if proper, that you order the same to be effected.

"Regarding the men employed as crew on board the lighters which we use in our business in this port, the classification 'Stevedoring' (N.O.C.) No. 7309, rate $7.51, has been applied to them. These men do no work as 'Stevedores' either. The Manual contains a classification for 'Barges, scows, lighters,' and as our business is precisely that of transporting cargo by the use of barges or lighters, we believe that this is the classification applicable to us, and we therefore submit this matter to your consideration.

"There remain the crew or operators of the tugboats and the laborers who work on the construction or repair of the boats, to whom classification 7088, whose rate is $5.09, has been applied. As you will see, the Manual gives a classification under 'Tugboats' for the former and under 'Boat building' (N.O.C.) for the latter. We also call your attention to this classification.

"We forgot to mention the clerks in the pier and in the warehouse, which according to your letter of Sept. 12, 1928, fall under classification 8709, paying 97¢ each $100. However, classification 7088 paying $5.09 has been applied to us."

The position of the Superintendent is stated in his answer to the above from which we copy the following:

"       *       *       *       *       *       *       *

"This preliminary assessment corresponds, according to the facts in the case, to the tax period from August 13, 1928, to June 30, 1929.

"The liquidation made by the Treasurer of Puerto Rico is as follows:

| Code | Occupation | Rate | Salary | Premium |
|------|-----------|------|--------|---------|
| 7309 | Loading and unloading vessels____ | 7. 51 | $42, 000 | $3, 154. 20 |
| 8810 | Office _____ | 0. 05 | 5, 000 | 2. 50 |
| 7088 | Lighterage Service _____ | 5. 09 | 7, 360 | 374. 64 |
| | Total_____ | _____ | $54, 360 | $3, 531. 34 |

"  *      *       *        *        *         *         *

"For the sake of clearness in the discussion of your case, we will divide the question into two parts, to wit:

"*a.* That referring to the clerks in the pier.

"*b.* That referring to the classification covering the risk.

"As to the first part of the problem, this Superintendent decides the case in your favor as this is in complete accord with the provisions of the Manual, that is, it is ruled that to the $2,500 in the payroll submitted with the schedule and pertaining to the classification of warehouses employees must be applied the rate of 97¢ under code 8709.

"As to the second part, that is, as to the nature and classification of your risk the ruling is as follows:

"1.—Your business is one of loading and unloading cargo in the port of Mayagüez. The acts of loading and unloading are grouped for the purpose of the assessment of the premium regardless of whether those acts are effected at a place where there is a pier or where there is a wharf. That is, the specific allegation that it differs as to the conditions of the port from other work or industry of the same nature, is immaterial.

"The word 'stevedoring' refers to the work made by the stevedore who according to Webster is:

" 'one whose occupation is to load and unload vessels in port.'

"From this definition it can be seen that it is immaterial what the condition of the port may be.

"Moreover, there is nothing in the Manual to differentiate the work in one port from the work in another port.

"It is as to the manner of performing the work that a distinction is made, as follows:

"*a.*—If the loading and unloading of cargo is made by hand or by means of hand trucks exclusively, the occupation of 'Stevedoring' falls under one classification.

"*b.*—If on the contrary the work is performed in any other manner, that is, not exclusively by hand or by means of hand trucks, then the occupation falls under another classification.

"The provisions of the Manual are definite and clear: As to the first classification which we have mentioned, the exact text of the Manual is as follows:

" 'Stevedoring—by hand or by means of hand trucks exclusively—no hoisting of cargo (N.P.D. in connection with a single vessel.) This classification is available only upon specific assignment of the rating organization having jurisdiction. When policies are issued covering both "Stevedoring (N.O.C.)" and "Stevedoring —by hand or by means of hand trucks exclusively," an explanatory endorsement shall be attached providing that no division of payroll will be permitted in connection with the loading and unloading of any one vessel.'

"As to the second classification, the text of the Manual is exactly as follows:

" 'Stevedoring (N.O.C.) Drivers Chauffeurs and their helpers must be rated as No. 7309 "Truckmen." "Stevedoring —Tallymen and checking clerks engaged in connection with stevedoring work." 8709.'

"In connection with the first classification there are two important points to be considered, to wit:

"1.—The words 'no hoisting of cargo,' and

"2.—The '(N.P.D. in connection with a single vessel.)'

"The adverb 'no' is of extraordinary importance, as may be seen from the penultimate paragraph on page 12-a which reads thus:

" 'When a classification includes a restrictive clause beginning with 'NO' or 'NOT' such classification SHALL NOT be available for any risk which includes ANY operation described in such restrictive clause.'

"The above provision is decisive; but there is still more. The first footnote to classification 7317, page 80 of the Manual, reads as follows: 'this classification is available *only* upon specific assignment of the rating organization having jurisdiction'; which shows that the application of classification 7317 is so risky that it can not be affected unless it has been previously submitted to, and approved by, the Superintendent of Insurance who, under the law, has exclusive jurisdiction concerning the fixing of rates.

"If we also take into consideration rule 'a' relating to the payroll division, page 10 of the Manual, which provides: 'The term "Risk," as used in this Manual, shall mean and include the entire operations of one employer within a given state,' and if we consider further the fact that all of your employments constitute one risk and that this risk pertains to the business of loading and unloading

ships and your operations are 'in connection with the loading and unloading of vessels,' it being immaterial, for the purpose of argument or of the law, that the risk of hoisting cargo exists by the will of the employer or by circumstantial necessities of the work itself, provided the hoisting of cargo really exists within the field of your operations, your business being connected with the loading and unloading of vessels which use slings, we must arrive at the conclusion that the case of the Mayagüez Dock and Shipping Co., Inc., is a clear case to be classified under 7309 N.O.C. which we have cited above.

"In conformity with this opinion, it is hereby decided that in accordance with the schedule submitted by the employer on October 25, 1928, and which is in the files of the Treasury Department, the liquidation of the case of the Mayagüez Dock & Shipping Co. Inc., and the temporary premiums that it must pay for insurance with the State Fund for the period between August 13, 1928, and June 30, 1929, should be as follows:

| Code | Occupation | Rate | Salary | Premium |
|------|-----------|------|--------|---------|
| 7309 | Loading and Unloading vessels | $7.51 | $42,060 | $3,158.71 |
| 8810 | Office | 0.05 | 5,000 | 2.50 |
| 7088 | Hoisting Cargo | 5.09 | 4,800 | 244.32 |
| 8709 | Clerks in the pier | 0.97 | 2,500 | 24.25 |
| | | | $54,360 | $3,429.78" |

As may be seen, the Superintendent accepted one of the objections raised by the company, namely, that pertaining to the clerks in the pier; but he maintained his opinion as to the other questions raised.

We believe that the Superintendent of Insurance acted correctly in adopting as a guide the "Workmen's Compensation and Employers' Liability Insurance Manual." This does not mean, however, that it must be followed blindly. If the peculiar circumstances or conditions under which the work is performed in Puerto Rico demand it, said circumstances must be taken into consideration.

The letter of the Mayagüez Dock & Shipping Co. gives the impression that its business is simply that of a warehouse, which is not really so. It performs the loading and unloading of vessels in port, taking the cargo in its lighters

and barges alongside the ships and transporting it to its pier where it is stored and in due time delivered to the consignees.

In virtue thereof, it can not be denied that the classification of stevedores for those of its workmen performing the loading and unloading of vessels is really the proper one. In the loading and unloading of ships by means of lighters and barges, the same apparatus is used as is employed in loading and unloading said ships when they moor to a wharf or to a pier. Perhaps the risk is greater in the loading and unloading by the use of lighters and barges.

It may be different as to the transfer of the cargo from the lighters and barges to the pier; and similarly as to the stowing of the cargo in the pier, and its delivery, since this work may be performed by hand or by means of hand trucks.

This is the only point on which the contention of the Mayagüez Dock & Shipping Co. appears to be logical. Perhaps a clear distinction may be made between the laborers employed on the one work, and those employed on the other, or perhaps if the same laborers perform both works, some equitable rule may be adopted fixing an average of payroll payments in order to determine the percentage that must be paid as insurance premium. Precedents must exist, and the very Manual seems to indicate this when referring to stevedores performing their work solely by hand or by means of hand trucks as something apart, in which case the sling risk is not present.

The pleadings and the record do not show the necessary facts to enable us to establish such distinction or to fix the rule by ourselves. The most we can do in justice to both parties is to return the case to the Superintendent for a new investigation and decision in accordance with the facts and attendant circumstances and taking into consideration what we have said in the preceding paragraph.

Mr. Justice Córdova Dávila took no part in the decision of this case.